First, the sentencing court committed significant procedural error in sentencing the defendant to 48 months for prohibited possession by applying 3C1.1 for perjurious obstruction and failing to apply 3E1.1 for acceptance. With regard to 3C1.1, the government did not prove, the court did not examine, and the record did not support willfulness, materiality, nor jurisdiction. The court merely disbelieved defendant's self-defense claim, as the government on page 47 of its brief acknowledges. The defendant essentially argued he was not the attacker or primary physical aggressor and that he therefore merely conflated a general denial with justification. Second, materiality is elusive because the court failed to specify exactly what assault to which it was referring when it vaguely referenced the defendant lying, quote, about having never attacked his wife or never strangling her, end quote. On the one hand, this is vague to understand how it could be material. And on the other, it's false because the record betrays this finding at pages 27, 39, and 41 of the sentencing transcript. The defendant admitted to biting his wife at page 39, to having a violent relationship with his wife at page 27, and to verbally assaulting his wife in an unreasonable manner at page 41. Now, the Dunnigan case, which I cited in my brief, instructs that the court's rejection of a self-defense claim is not necessarily perjury. In viewing the purported falsehood in a light most favorable to defendant, which is required under US v. Harris, 352nd F. 3rd. 362, an Eighth Circuit case from 2003, this court is free to overrule and remand for resentencing. I will also note that the government does not seem to be as concerned that the defendant is lying about being able to see into the future to be telepathic with the family dog or otherwise clairvoyant. All of these facts are facts that were brought out by the government during the cross-examination of the defendant. If we're worried about whether or not he's telling the truth, we need to also be worried about whether or not he can perceive reality. So, there is no willfulness, no materiality, and third, there's no jurisdiction. Under the Brown and Messina cases, when read together, first of all, Brown, a 1957 case from the Eighth Circuit, luring an IRS supervisor to Nebraska solely to indict him by using his purportedly perjured testimony during a grand jury proceeding, was not considered to be perjury because jurisdiction is an element of the offense. Now, in this particular case, the unique procedural posture is that the government, when the defendant notified the court that it was going to plead guilty to possession of firearms as a prohibited possessor, but proceed to trial on the choking case, on the impeding airflow blood flow case, the government conceded it did not have jurisdiction to prosecute that case and moved to dismiss. So, if the defendant then is accused of lying about the assault that the government acknowledged it had no jurisdiction to prosecute, then we have to ask whether or not this is really perjury. Under 3C1.1. And you say it wasn't material to the guideline range either because the judge ended up saying that he couldn't, I forget how he phrased it, but the two were not related enough to where he was going to. That's correct, Your Honor. Back to the guidelines, is that right? I believe that the court said that it was not relevant conduct, but then nevertheless it considered that he was lying in court about that very assault. So, we believe that it's not material and it's not relevant conduct. And we point to note 3 to 3E1.1, which indicates that if you accept responsibility for the offense of conviction and you don't lie about any additional relevant conduct, then that is significant evidence of acceptance of responsibility. Could it be material just to the 3553A analysis, whether he assaulted the wife or the girlfriend? I don't believe so, not with a finding of irrelevant conduct because we're talking about the offense of conviction. Well, but I mean, once you've calculated the guidelines, then the judge has to do the final sentencing analysis, which factors in all of the statutory factors. It is the defendant's position that the court wasn't specific enough about the 3553A factors, especially the assault. There was no, I grant you, there was no finding on materiality that I could see. You don't know of any place where the judge made a specific statement about materiality, do you? I do not, and I don't believe the court, or I don't believe the government proved it by preponderance, which I believe is required. The, what about the departure? The government had a departure request based on dismissed conduct. Based, the 5K1.21, a request from the government. The government's position is- Could be relevant and material to that. No, because we know now from the proceeding that the government was wrong about that, that the court found that it was not, it was denied, it was rejected. And so it wasn't material to that, and it wasn't material to the assault, and it couldn't be. The lied about conduct was about the assault, that it could not, that the government had no jurisdiction to prosecute, and it could not be material to the 5K1.21 request because the court found that that was not, that it was not meritorious, is the word I was searching for. You want to address the harmless error argument before your time runs out? I do, Your Honor. Because the judge did say at the end that even if he was wrong on the guideline adjustments, he would have opposed the same sentence under 3553A. So I think you should address that as to whether that's a basis to affirm, even if we agree with you on the two guideline matters. Absolutely, Your Honor. And I recently submitted a 28J letter for Ninth Circuit authority citing to Vega-Leal in the Ninth Circuit. Do you have any Eighth Circuit authority on that? I do not, Your Honor. I know that the government quoted the, or cited the Pappas decision, which I was involved in, and I know that there was a similar statement in Pappas. And Pappas cited to the Milo Davis decision, and I was involved in that in the district court. And there was a similar. What do you think should be required for a judge to be affirmed on this theory? If I look to the Feimster decision, there has to be something that shocks the conscience. And I think we have something here. The prophylactic statement, the rehearsal of the 3553A factors, I don't believe is sufficient. And I think it's time to reexamine Pappas and Davis in light of this seemingly, this circuit split with Vega-Leal. The, what we have here is we have a Red Sox versus the Yankees. We've got, the court decided that it was going to sentence the defendant because of, basically the generalized dislike for his political views, which we haven't had an opportunity to talk about here. But with regard to, there are some errors that cannot be harmless. Even if there is an attempt to insulate them with this prophylactic statement. And I think we have that here with the defendant's political views. And with an, I'd like to use my remaining time to discuss that. The, substantively it was error for the court to proxy for danger the defendant's traditional views on marriage and women. The court predicted that the defendant was dangerous because it argued exhibit five, showed he was dangerous. And that the defendant's testimony demonstrated the defendant blamed others for his problems, particularly women. The court made clear that protection of the community was its driving force and varying upward from its own calculation. And one need only look to the defendant's cross-examination at sentencing transcript 44 to 45, where the government drove home the point repeatedly that, quote, you were the one that told her she was not allowed to work. End quote. You were the one that told her she was not allowed, that you were going to divorce her and leave her if she worked and she could quit her job and you would stay with her. And none of this had anything to do with the merits of a prohibited possession firearms case. And the court took it all into consideration by accepting that it, that it was, that he was dangerous as a result of these exhibits in this testimony. Thank you. I see my time is up. Very well. Thank you for your argument. Ms. Williams, we'll hear from you. Your Honors, Lisa Williams here on behalf of the United States. I want to start where we ended and pick up on the argument that the district court erred in varying upwards because it predicted that this defendant would be dangerous. Absolutely nothing could be further from the truth. This defendant had an incredible documented history beginning with the incident with his grandparents, I believe it was in 2006, where he threatened to burn their house down, break everything, get even with them. He ripped the phone cord out of their house so that they could not call for help. And as his grandmother slept, he pulled out her supplemental oxygen in an effect to I don't know, maybe kill her. When he is involuntarily committed by his grandparents as a result of this episode, he is violent with treatment staff. He is jumping on tables. He is noncompliant. He then enters a relationship with Ramona Pruitt in Wyoming. The police are called out to his house in Wyoming. But as Ms. Pruitt, when he takes a shower, she has to flee with her children because she is worried that he is going to physically assault her. Police show up. She's in a field running away from their house and he is screaming at her from the front door. A few months later, police respond to the Pruitt household where they observe an incredible amount of damage done to her car, hood, and windshield. I believe at the sentencing hearing, he admitted he took a baseball bat or something he couldn't remember what and pounded on the car because he was upset with Ms. Pruitt. A few months after that, during an argument, he got so upset with Ms. Pruitt that he chased her down in his car, got out, approached her vehicle, her window was raised, and he took his hands and pounded with his bare fist three times. And on the third time, he used so much force that he broke the glass and it shattered inwards with enough force that she began bleeding from her face and that there were large chunks of glass on the car seat. So I would submit that nothing could be further from the truth that the district court guessed or predicted that someday this defendant would be dangerous. This defendant has a documented history of violence and dangerous, and that is in large part what the district court based its decision to vary on. Could you address the obstruction adjustment? Because we have the judge saying, I find the defendant committed perjury. But my question is whether the judge made a separate and clear finding as to each element of that or even made a finding that encompassed all the factual predicates. The judge did not make a specific finding on each element of perjury. I would suggest that first, this is district court judge C.J. Williams, who has, before taking the bench, was a trial attorney with the Department of Justice for I believe almost 20 years, and I believe is certainly familiar with the elements of perjury. We have a lot of good district judges, but we still have rules. And they're all excellent. But. We still have rules about elements. They still get reversed. But he didn't say, and, but that goes to my point, judge, is he didn't say, I find this defendant lied. I think that would be a more problematic record. He said, I find the defendant committed perjury before me when he lied. And because he said committed perjury, I think that that does suggest a finding of the required. This judge knows what perjury means. All judges know what perjury means. We presume all district judges know what perjury means. But Dunnigan presumably thought that too. But it still said there ought to be either separate and clear findings or at least a finding that encompasses all the factual predicates. And since there isn't one here, why shouldn't it be remanded? Well, that brings me to the. Particularly since there's a real issue about materiality. That, that brings me to the second argument with the perjury is if a district court judge doesn't make distinct and separate findings on each element of perjury, this court can still affirm if it's determined. Well, we've stretched it. We've stretched Dunnigan. I wonder if we've stretched it about as far as it can go. What about materiality here? So it's. How is this material if the judge wasn't going to depart anyway because the matters were not related? So it's material for two reasons. First, it is material to the departure. Because until the bench rules on the departure motion, the parties don't know what's going to happen. And there's two steps in the departure analysis for the 2K2.21 departure based on dismissed or uncharged conduct. First is that the conduct took place. So the government has to prove as an initial. But you can skip over that and say even if it took place, you don't meet the second element. Which is what he said here. The second element wasn't met. And until he ruled that, the parties didn't know. And in fact, I argued and told Mr. Montano's defense attorney, and this is in the record, that had he admitted I assaulted my wife and then wanted to proceed to the legal argument that that assault was not closely connected enough with the relevant conduct to warrant a departure, he still would be entitled to his acceptance. I do believe that. But he did not admit to the assault. And so the government had to threshold, prove that this conduct took place because he denied the conduct. I don't think I'm convincing you of that. So I'd move on to the- Well, I'm not saying you are or you aren't. I'm trying to understand it. I'm trying to understand how the testimony could have influenced whether he got the departure. Because the departure wasn't going to be granted even if he admitted it. Right? As it turns out, that's correct. Yes, as it turns out, you're correct. All right. So you still think it's material even though it didn't matter one way or the other whether he assaulted? Well, yes. But it's also material to the 3553A factors. And I do believe that's a stronger argument, Your Honor. Well, the judge never said anything about that. That's true. There's not a finding on the record where he says, this is perjury and I find it material as it relates to the 3553A considerations. That is not on the record. But the idea that- How do you think it went into the 30? You mean, you think the fact that he assaulted her was part of the 3553A analysis? Given his history of violence, yes, I do, Your Honor. And- What about the harmless error? Well, go ahead if you want to say more. And then finally, we get to harmless error. And I disagree in this case that- And again, if you listen to what counsel is asking this court to do, he's, quote, asking you to re-examine Pappas. And with all due respect, this panel does not have the authority to overturn another panel. And so, the invitation to re-examine the Pappas decision should be declined. Well, what's the rule of that case? That even if the judge had committed an error, such error is harmless if the judge would have imposed, in this case, the same or an identical sentence absent the error. And there is a good record on that. But do we have to be satisfied that the judge would have varied upward from 21 months to 48 months rather than 33 to 48? Should we require that he explain why that degree of variance is warranted in order to say that any error is harmless? I don't think that that degree of specificity, that this court should require that degree of specificity from a district court judge. This district court judge did give the concluding remarks. They were thoughtful. He thoughtfully analyzed all the 3553A factors despite what defendant argues, his military service, his criminal history, the nature and circumstance of the offense, his mental health history, his employment history. I mean, it was fairly exhaustive. And so you have a record that shows that this judge thoughtfully and thoroughly considered the 3553A factors. And then you have the next few sentences saying, and even if I'm wrong, in light of all of these 353A factors that I just discussed, I still would impose the 48-month sentence. And so maybe there's a case in which the circuit would need more of an explanation from the district court, but it is not this case. This judge provided a very thorough explanation for the basis of his sentence and why he would still impose the 48-month sentence. I would also note that going back to the materiality issue, the government did not only move for a departure based on the assault. The government also moved for a variance based on that assaultive conduct. And that was a written variance. And we argued it at the sentencing hearing. And so if it's not relevant to the departure, because we ultimately lose that, it was relevant to the government's motion for a variance. That was in part what the motion was based on. And because it's relevant to that, then we get into the materiality analysis. And I see that I am out of time. All right. Seeing no further questions, we thank you for your argument. Thank you, Your Honor. Mr. Smelik, I think you used all of your time on the first round. So I think we, was there any further questions for Mr. Smelik? I think we'll just submit the case on the arguments and file an opinion in due course.